IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MELANIE LEE TIPPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. SA-12-CV-00766-DAE |
| ) | |
| STEVE MCCRAW; RUDY ) | |
| ZARATE; and JOSEPH ) | |
| KOSMALSKI, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS

On May 3, 2013, the Court heard a Partial Motion to Dismiss brought by Defendants Joseph Kosmalski and Rudy Zarate. Shana Molinare, Esq., appeared at the hearing on behalf of Defendants Joseph Kosmalski and Rudy Zarate; Chad Van Brunt, Esq., appeared on behalf of Plaintiff Melanie Lee Tipps. After reviewing the motion and the supporting and opposing memoranda, the Court **GRANTS** the Partial Motion to Dismiss (doc. # 24).

BACKGROUND

Plaintiff Melanie Lee Tipps ("Plaintiff") brings this action under 42 U.S.C. § 1983 for civil rights violations along with common-law claims

for false imprisonment, malicious prosecution, and intentional infliction of emotional distress.  ("FAC," doc. # 22.)

In November 2010, Trooper Rudy Zarate ("Zarate") made a telephone phone call to Plaintiff, informing her that the Texas Department of Public Safety was conducting an investigation into hundreds of false identification documents (hereinafter "fake IDs").  (Id. ¶ 7.)  He stated that her image and name appeared on at least three fake IDs found at nightclubs in San Antonio.  (Id.)  Plaintiff denied any wrongdoing and expressed concern that she had been the victim of identity theft.  (Id.)  According to Plaintiff, Trooper Zarate insisted that she travel from Austin, where Plaintiff resides, to his office in San Antonio for an interview or otherwise face arrest.  (Id.)  Plaintiff explained that she was currently employed as Director of Marketing at Austin Telco Federal Credit Union and that she was uncomfortable requesting time off work for a felony investigation.  (Id.)  When she asked why a personal appearance was necessary, Trooper Zarate allegedly stated that most people physically appeared to provide a sworn statement.  (Id.)  Plaintiff then offered to mail Trooper Zarate a notarized, sworn statement denying any involvement with the crime.  (Id.)  According to Plaintiff, Trooper Zarate informed her that if she did not personally appear in San Antonio, he would have her arrested.  (Id.)  Plaintiff explained that it seemed completely unnecessary to travel

to San Antonio, that she had informed him of everything that she knew, and that she was willing to provide him an affidavit by mail. (Id.) Trooper Zarate replied that he would send her a letter stating that there was probable cause for her arrest and that she needed to make an appointment to come to a Department of Public Safety Office in San Antonio. (Id.)

On November 18, 2010, Trooper Zarate and Trooper Joseph Kosmalski ("Kosmalski") sent Plaintiff a letter notifying her of the pending criminal investigation, stating that charges against her were imminent and requesting that she make an appointment to come to their office in San Antonio. (Id. Ex. 1.) That same day, Plaintiff produced an "Affidavit for Changing the Driver License or Identification Card Number When the License or Identification Card Holder is a Victim of a Forgery Crime" (id. Ex. 2) along with a sworn statement that she had no involvement in the creation or distribution of fake IDs (id. Ex. 3). She then mailed these documents to Trooper Zarate. (Id. ¶ 8.) Soon thereafter, Plaintiff received the letter sent by Troopers Zarate and Kosmalski. (Id.) There was no further communication between Plaintiff and the Troopers. (Id.)

On March 21, 2011, two affidavits sworn by Trooper Kosmalski and signed by Trooper Zarate were presented to the magistrate in Bexar County, Texas.

(Id. Ex. 4, Ex. 5.) The affidavits asserted, inter alia, that the Troopers had good reason to believe that Plaintiff had committed the crimes of Tampering with Governmental Record in violation of Texas Penal Code § 37.10(a) and Fraudulent Use or Possession of Identifying Information in violation of Texas Penal Code § 32.51. (Id.) Two arrest warrants were secured. (Id. Ex. 6, Ex. 7.)

On August 8, 2011, Plaintiff was arrested at the Houston airport upon returning from a family vacation. (Id. ¶ 10.) She was taken to jail and held without bond. (Id.) Her parents, who were with her at the time of her arrest, immediately hired an attorney. (Id.) Plaintiff's counsel contacted Bexar County Assistant District Attorney Joanne Woodruff, who determined that there was no probable cause for Plaintiff's arrest and filed motions in state court to dismiss the criminal charges against Plaintiff. (Id. Ex. 8, Ex. 9.) The magistrate granted the motions, and Plaintiff was released from prison soon thereafter. (Id.) According to Plaintiff, she subsequently lost her job and suffered severe mental anguish in addition to incurring attorney fees for her criminal defense and for the expunction of her criminal record. (Id. ¶ 11.)

On August 10, 2012, Plaintiff filed suit in this Court against Troopers Zarate and Kosmalski as well as the Texas Department of Public Safety ("DPS") for civil rights violations under 42 U.S.C. § 1983 and for false imprisonment,

malicious prosecution, and intentional infliction of emotional distress.  (Doc. # 1.)  On September 6, 2012, the DPS filed a Motion to Dismiss (doc. # 7) and Troopers Zarate and Kosmalski filed a Partial Motion to Dismiss (doc. # 8).  On September 27, 2012, Plaintiff filed a Motion for Leave to Amend, seeking to remove the DPS from the suit and to add DPS Director Steven C. McCraw.  (Doc. # 12.)  The Court granted Plaintiff's Motion for Leave to Amend, which rendered moot the motions to dismiss.

On February 11, 2013, Plaintiff filed a First Amended Complaint against Troopers Zarate and Kosmalski and DPS Director Steven McCraw.  (Doc. # 22.)  In her First Amended Complaint, Plaintiff again brings claims for civil rights violations under 42 U.S.C. § 1983 and for false imprisonment, malicious prosecution, and intentional infliction of emotional distress.  (Id.)  On February 14, 2013, Troopers Zarate and Kosmalski filed a Partial Motion to Dismiss Plaintiff's First Amended Complaint.  (Doc. # 24.)  On February 26, 2013, Plaintiff filed a Response in opposition to the motion.  (Doc. # 25.)

## STANDARD OF REVIEW

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v.

Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

   A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Twombly, 550 U.S. 544, 555–56 (2007).  In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57.  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted).  Thus, although all reasonable inferences will be resolved in

favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

## DISCUSSION

Troopers Zarate and Kosmalski bring a Partial Motion to Dismiss, arguing that Plaintiff's state-law tort claims are barred by § 101.106(f) of the Texas Tort Claims Act. For the reasons stated below, the Court agrees and **GRANTS** the Partial Motion to Dismiss (doc. # 24).

I.   History of Texas Tort Claims Act § 101.106(f)

"The Texas Tort Claims Act provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages." Mission Consol. Indep. Sch. Dist. v. Garcia, 253 S.W.3d 653, 655 (Tex. 2008). This waiver of immunity does not extend to claims arising out of intentional torts. See Tex. Civ. Prac. & Rem. Code § 101.057 (excluding waiver for a claim "arising out of assault, battery, false imprisonment, or any other intentional tort"); Morgan v. City of Alvin, 175 S.W.3d 408, 418 (Tex. App. 2004).

Before the Texas State Legislature passed the Texas Tort Claims Act

in 1969, "if [a] suit against the government was barred by immunity, a plaintiff could sue and recover against a government employee-actor in his individual capacity even though, were he sued for the same conduct in his official capacity, he would be shielded by derived governmental immunity." Franka v. Velasquez, 332 S.W.3d 367, 383 (Tex. 2011).  In 1985, the Texas Legislature amended the Texas Tort Claims Act to add § 101.106(f), which provided: "A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim."  See Garcia, 253 S.W.3d at 656.  The amendment only barred suits against government employees when claims were reduced to a judgment.  Id.

In 2003, as part of a comprehensive effort to reform the tort system, the Texas Legislature amended § 101.106 of the Texas Tort Claims Act.  Id.  Section 101.106, entitled "Election of Remedies," requires a plaintiff, at the time suit is filed, to make an election between suing the governmental unit under the Texas Tort Claims Act or proceeding against the employee alone.  Id. at 657.  "The revision's apparent purpose was to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is

vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery." Id.

However, § 101.106(f) does not provide an "election of remedies" to a plaintiff as much as provide government employees immunity from suit in certain instances. See Univ. of Tex. Health Sci. Ctr. v. Bailey, 332 S.W.3d 395, 401 (Tex. 2011). Section 101.106(f) of the Texas Tort Claims Act provides in pertinent part:

> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.

Tex. Civ. Prac. & Rem. Code § 101.106(f). Thus, a defendant is entitled to dismissal under section 101.106(f) upon proof that the plaintiff's suit (1) was based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the Tort Claims Act. Anderson v. Bessman, 365 S.W.3d 119, 124 (Tex. App. 2011). The statute strongly favors dismissal of governmental employees. Waxahachie Indep. Sch. Dist. v. Johnson, 181 S.W.3d 781, 785 (Tex. App. 2005).

II. <u>Scope of Employment With a Governmental Unit</u>

The first prong of § 101.106(f) is whether the conduct at issue was within the scope of the defendant's employment with a governmental unit. This first component encompasses two inquiries: "whether the individual defendant was an employee of a governmental unit and whether the acts alleged fall within the scope of that employment at the relevant time." <u>Anderson</u>, 365 S.W.3d at 124. There is no dispute that Troopers Zarate and Kosmalski were employees of a governmental unit, the DPS. However, the parties essentially dispute whether the actions taken by Troopers Zarate and Kosmalski fell within the scope of their employment.

The Texas Tort Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5). The Restatement (Third) of Agency provides:

> An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

Restatement (3d) of Agency § 7.07. "An official acts within the scope of her authority if she is discharging the duties generally assigned to her." City of Lancaster v. Chambers, 883 S.W.2d 650, 658 (Tex. 1994) (finding that on-duty police officers, pursuing a suspect in squad car, did not act outside the scope of their authority in driving without regard for safety of others). This is true even if the employee, in discharging her duties, acts in part to serve the employee's or a third party's interest. Hopkins v. Strickland, No. 01-12-00315-CV, 2013 WL 1183302, at *3 (Tex. App. Mar. 21, 2013) (citing Anderson, 365 S.W.3d at 125–26).

Plaintiff's claims for false imprisonment, malicious prosecution, and intentional infliction of emotional distress all arise directly out of the criminal investigation of the fake IDs, application for a warrant, and eventual arrest of Plaintiff by Troopers Zarate and Kosmalski. As law enforcement officers, Troopers Zarate and Kosmalski were generally acting within the scope of their duties in investigating a potential crime, applying for a warrant, and making an arrest. Even if conducted with improper motives or in an improper manner, their actions remain within the general scope of duties of law enforcement officers. See Chambers, 883 S.W.2d at 658 (rejecting notion that high-speed chase was outside the scope of police officers' work because they lacked discretion to drive in way

that endangers others); Ballantyne v. Champion Builders, Inc., 144 S.W.3d 417, 425–26 (Tex. 2004) (holding that members of city's Board of Adjustment acted within scope of authority in revoking building permit where statute conferred authority to revoke, even though court had determined that the Board was incorrect).

Plaintiff argues that she is suing Troopers Zarate and Kosmalski in their individual capacities. More specifically, Plaintiff contends that if the Troopers acted in "bad faith," they would not be entitled to "official immunity." She correctly states that public officials are only entitled to official immunity from suits arising from the performance of their "(1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." See Chambers, 883 S.W.2d at 653.

However, Plaintiff conflates official immunity with the statutory immunity provided by § 101.106(f). See Franka, 332 S.W.3d at 393 (Medina, J., dissenting) (explaining that the two defenses "should not be confused"). Under Texas law, official immunity is a common-law defense that protects public officials from individual liability. See Ballantyne, 144 S.W.3d at 424. By contrast, § 101.106(f) provides statutory immunity to government employees "based on conduct within the general scope of that employee's employment [that]

could have been brought . . . against the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(f). Moreover, § 101.106(f) protects employees even in their <u>individual</u> capacities, as the Texas Supreme Court clarified in its recent opinion <u>Franka v. Velasquez</u>, 332 S.W.3d 367 (Tex. 2011). The court held that § 101.106 "foreclose[s] suit against a government employee in his <u>individual</u> capacity if he was acting within the scope of employment." <u>Id.</u> at 381 (emphasis added). Although this cuts off an avenue of recovery for plaintiffs, this result, the Texas Supreme Court explained, is exactly what the Texas legislature intended. <u>Id.</u> at 384. By waiving governmental immunity for the governmental unit, the court reasoned that "the Legislature correspondingly sought to discourage or prevent recovery against an employee." <u>Id.</u>

   Plaintiff also invokes the so-called <u>ultra vires</u> exception to no avail. "Under Texas law, a suit against a government employee in his official capacity is a suit against his government employer with one exception: an action alleging that the employee acted <u>ultra vires</u>." <u>Franka</u>, 332 S.W.3d at 383. An <u>ultra vires</u> action is one in which the plaintiff seeks "relief in an official-capacity suit against a government actor who allegedly has violated statutory or constitutional provisions by acting without legal authority or by failing to perform a purely ministerial act." <u>Lazarides v. Farris</u>, 367 S.W.3d 788, 801 (Tex. App. 2012) (citing <u>City of El Paso</u>

v. Heinrich, 284 S.W.3d 366, 372–73 (Tex. 2009)).  Governmental immunity does not bar such ultra vires claims, but the only remedies available to a successful plaintiff are prospective declaratory and injunctive relief.  Heinrich, 284 S.W.3d at 376, 380; see Lowell v. City of Baytown, 356 S.W.3d 499, 501 (Tex. 2011) (explaining "retrospective monetary remedies are generally barred by governmental immunity").  Plaintiff seeks damages, not prospective injunctive or declaratory relief, in this case; thus, the ultra vires exception does not apply.

Finally, to the extent Plaintiff argues dismissal is improper at the motion to dismiss stage of the proceedings, her argument is not supported by Texas case law.  See, e.g., Illoh v. Carroll, No. 14-09-01001-CV, 2012 WL 1570991, at *1 (Tex. App. May 3, 2012) (reversing the trial court's denial of defendant's motion to dismiss brought under § 101.106(f)); Lieberman v. Romero, No. 05-08-01636-CV, 2011 WL 1879241, at *2 (Tex. App. May 18, 2011) (affirming the trial court's grant of defendants' motion to dismiss under § 101.106(f)).

III. "Could Have Been Brought Under" the Texas Tort Claims Act

The second prong of § 101.106(f) is whether suit "could have been brought against the government unit under the Tort Claims Act."  Anderson, 365 S.W.3d at 124.

In <u>Franka</u>, the Texas Supreme Court construed the phrase "could have been brought under this chapter against the governmental unit" in section 101.106(f).  See <u>Franka,</u> 332 S.W.3d at 369.  The issue in <u>Franka</u> was whether a government employee must demonstrate the suit could <u>successfully</u> be brought against the governmental unit to qualify for statutory immunity under § 101.106(f).  See <u>id.</u> at 375.  The court held that, for the purposes of § 101.106(f), a tort action "could have been brought under" the Texas Tort Claims Act regardless of whether the Act waives immunity[1] for the tort action.  <u>Id.</u>  In this case, even though the Texas Tort Claims Act does not waive liability for common-law intentional torts, they arise "under" the Act for purposes of § 101.106(f).  Thus, Plaintiff's state-law claims for false imprisonment, malicious prosecution, and intentional infliction of emotional distress all "could have been brought under" the Texas Tort Claims Act against the DPS, a governmental unit.

In sum, because the First Amended Complaint alleges acts within the scope of Troopers Zarate and Kosmalski's employment, and because Plaintiff's claims "could have been brought under" the Texas Tort Claims Act against the

---

[1] Prior to <u>Franka</u>, a majority of Texas courts had interpreted "could have been brought under this chapter against the governmental unit" to mean the suit must be one where the state has waived its sovereign immunity.  See <u>Franka</u>, 332 S.W.3d at 382 n.67.

DPS, Plaintiff's state-law intentional tort claims are barred by the Texas Tort Claims Act.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Partial Motion to Dismiss (doc. # 24).

IT IS SO ORDERED.

DATED: San Antonio, Texas, May 22, 2013.

_____
David Alan Ezra
Senior United States District Judge