IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MELANIE LEE TIPPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. SA-12-CV-00766-DAE |
| ) | |
| STEVE MCCRAW; RUDY ) | |
| ZARATE; and JOSEPH ) | |
| KOSMALSKI, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

ORDER GRANTING DEFENDANT MCCRAW'S MOTION TO DISMISS

On October 21, 2013, the Court heard the Motion to Dismiss brought by Defendant Steven C. McCraw. (Dkt. # 36.) Demetri Anastasiadis, Esq., appeared at the hearing on behalf of Defendant Steven McCraw; Shanna Molinare, Esq., appeared on behalf of Defendants Rudy Zarate and Joseph Kosmalski; Chad Van Brunt, Esq., appeared on behalf of Plaintiff Melanie Lee Tipps. After reviewing the motion and the supporting and opposing memoranda, the Court **GRANTS** the Motion to Dismiss.

BACKGROUND

Plaintiff Melanie Lee Tipps ("Plaintiff") brings this action

under 42 U.S.C. § 1983 for civil rights violations along with common-law claims for false imprisonment, malicious prosecution, and intentional infliction of emotional distress.  (Dkt. # 22 ("FAC").)

I.     Factual Background

In November 2010, Trooper Rudy Zarate ("Zarate") made a telephone call to Plaintiff, informing her that the Texas Department of Public Safety ("DPS") was conducting an investigation into hundreds of false identification documents (hereinafter "fake IDs").  (Id. ¶ 7.)  He stated that her image and name appeared on at least three fake IDs found at nightclubs in San Antonio.  (Id.)  Plaintiff denied any wrongdoing and expressed concern that she had been the victim of identity theft.  (Id.)  According to Plaintiff, Zarate insisted that she travel from Austin, where Plaintiff resides, to his office in San Antonio for an interview or otherwise face arrest.  (Id.)  Plaintiff explained that she was currently employed as Director of Marketing at Austin Telco Federal Credit Union and that she was uncomfortable requesting time off work for a felony investigation.  (Id.)  When she asked why a personal appearance was necessary, Zarate allegedly stated that most people physically appeared to provide a sworn statement.  (Id.)  Plaintiff then offered to mail Zarate a notarized, sworn statement denying any involvement with the crime.  (Id.)  According to Plaintiff, Zarate informed her that if she did not personally

appear in San Antonio, he would have her arrested. (Id.) Plaintiff explained that it seemed completely unnecessary to travel to San Antonio, that she had informed him of everything that she knew, and that she was willing to provide him an affidavit by mail. (Id.) Zarate replied that he would send her a letter stating that there was probable cause for her arrest and that she needed to make an appointment to come to a DPS office in San Antonio. (Id.)

On November 18, 2010, Zarate and Trooper Joseph Kosmalski ("Kosmalski") sent Plaintiff a letter notifying her of the pending criminal investigation, stating that charges against her were imminent and requesting that she make an appointment to come to their office in San Antonio. (Id. Ex. 1.) That same day, Plaintiff produced an "Affidavit for Changing the Driver License or Identification Card Number When the License or Identification Card Holder is a Victim of a Forgery Crime" (id. Ex. 2) along with a sworn statement that she had no involvement in the creation or distribution of fake IDs (id. Ex. 3). She then mailed these documents to Zarate. (FAC ¶ 8.) Soon thereafter, Plaintiff received the letter sent by Zarate and Kosmalski. (Id.) There was no further communication between Plaintiff and the troopers. (Id.)

On March 21, 2011, two affidavits sworn by Kosmalski, and signed by Zarate, were presented to the magistrate in Bexar County, Texas. (Id. Exs.

4–5.) The affidavits asserted, inter alia, that the troopers had good reason to believe that Plaintiff had committed the crimes of Tampering with Governmental Record in violation of Texas Penal Code § 37.10(a) and Fraudulent Use or Possession of Identifying Information in violation of Texas Penal Code § 32.51. (Id.) Two arrest warrants were secured. (Id. Exs. 6–7.)

On August 8, 2011, Plaintiff was arrested at the Houston airport upon returning from a family vacation. (FAC ¶ 10.) She was taken to jail and held without bond. (Id.) Her parents, who were with her at the time of her arrest, immediately hired an attorney. (Id.) Plaintiff's counsel contacted Bexar County Assistant District Attorney Joanne Woodruff, who determined that there was no probable cause for Plaintiff's arrest and filed motions in state court to dismiss the criminal charges against Plaintiff. (Id. Exs. 8–9.) The magistrate granted the motions, and Plaintiff was released from jail soon thereafter. (FAC ¶ 10.) According to Plaintiff, she subsequently lost her job and suffered severe mental anguish in addition to incurring attorney fees for her criminal defense and for the expunction of her criminal record. (Id. ¶ 11.)

II.   Procedural History

On August 10, 2012, Plaintiff filed suit against the DPS and Troopers Zarate and Kosmalski for civil rights violations under 42 U.S.C. § 1983 and for

false imprisonment, malicious prosecution, and intentional infliction of emotional distress. (Dkt. # 1.) On September 6, 2012, the DPS filed a Motion to Dismiss (Dkt. # 7) and Troopers Zarate and Kosmalski filed a Partial Motion to Dismiss (Dkt. # 8). On September 27, 2012, Plaintiff filed a Motion for Leave to Amend, seeking to remove the DPS from the suit and to add DPS Director Steven C. McCraw ("McCraw"). (Dkt. # 12.) The Court granted Plaintiff's Motion for Leave to Amend, which rendered the motions to dismiss moot.

On February 11, 2013, Plaintiff filed a First Amended Complaint against Troopers Zarate and Kosmalski and Director McCraw. (Dkt. # 22.) In her First Amended Complaint, Plaintiff again brings claims for civil rights violations under 42 U.S.C. § 1983 and for false imprisonment, malicious prosecution, and intentional infliction of emotional distress. (Id.)

On February 14, 2013, Zarate and Kosmalski filed a Partial Motion to Dismiss Plaintiff's First Amended Complaint, seeking dismissal of the common-law tort claims brought against them. (Dkt. # 24.) The Court granted the motion. (Dkt. # 34.)

On June 11, 2013, Director McCraw filed a Motion to Dismiss. (Dkt. # 36.) On June 25, 2013, Plaintiff filed a Response in opposition to the motion. (Dkt. # 37.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Review is limited to the contents of the complaint and matters properly subject to judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Twombly, 550 U.S. 544, 555–56 (2007). In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See id. at 556–57. "The tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

## DISCUSSION

DPS Director McCraw moves to dismiss Plaintiff's claims against him pursuant to Rule 12(b)(6) as well as on the basis of qualified immunity.[1] (Dkt. # 36.) McCraw also asks this Court to dismiss Plaintiff's state-law tort claims pursuant to Texas Civil Practice and Remedies Code § 101.106.

---

[1] It is unclear from the First Amended Complaint whether Plaintiff is suing McCraw in his individual and/or official capacities. As a result, McCraw asks for the dismissal of claims made against him in his official capacity based on state sovereign immunity under the Eleventh Amendment. (Dkt. # 36 at 12.) Plaintiff essentially concedes that she is only suing McCraw in his individual capacity by stating in her Response: "Plaintiff agrees that she is not seeking equitable relief from future actions at this time and thus [McCraw's Eleventh Amendment] argument is inapplicable to this case." (Dkt. # 37 at 6.)

I.      Section 1983 Claims

Section 1983 provides a private right of action for any person whose constitutional rights are deprived by state officials acting under the color of state law. Conn v. Gabbert, 526 U.S. 286, 290 (1999). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979)). To bring a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994).

It is well settled that "[t]here is no vicarious or respondeat superior liability of supervisors under § 1983." Rios v. City of Del Rio, 444 F.3d 417, 425 (5th Cir. 2006). "Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." Id. (quoting Evett v. DETNTFF, 330 F.3d 681, 689 (5th Cir. 2003); see also Southard v. Tex. Bd. of Criminal Justice, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction

of the supervisor."). The Fifth Circuit has held that district courts "use the same standard in assessing an individual supervisor's liability under § 1983" as that used "in assessing a municipality's liability." Doe v. Taylor ISD, 15 F.3d 443, 453 (5th Cir. 1994) (en banc). Supervisory liability under § 1983 requires a showing of the supervisor's "deliberate indifference" to the "known or obvious fact" that constitutional violations would be committed by subordinates based on the supervisor's action (or inaction), and this "generally requires that a plaintiff demonstrate at least a pattern of similar [constitutional] violations." See Rios, 444 F.3d at 427 (quoting Johnson v. Deep E. Tex. Reg'l Narcotics, 379 F.3d 293, 309 (5th Cir. 2004)).

In the First Amended Complaint, Plaintiff alleges that McCraw "had knowledge of facts putting him on notice that Trooper Zarate and Trooper Kosmalski had behavioral problems which . . . posed an extreme risk of harm to the citizens of the state of Texas." (FAC ¶ 18.) She further asserts that McCraw "failed to properly train and inform personnel in a supervisory capacity over Tropper Zarate and Trooper Kosmalski" and, as a result, the troopers were not fired prior to coming into contact with her. (Id. ¶ 19.) Although Plaintiff claims McCraw had "knowledge" of the "prior inappropriate behavior" of Zarate and Kosmalski, she fails to allege a single prior incident involving misconduct on the

part of Zarate and Kosmalski that would have put McCraw on notice of their "behavioral problems."

A supervisor may be liable for failure to supervise or train a subordinate employee if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Goodman v. Harris Cnty., 571 F.3d 388, 395 (5th Cir. 2009) (quoting Smith v. Brenoettsy, 158 F.3d 908, 911–12 (5th Cir. 1998)). Similarly, "failure [by a supervisor] to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011) (quoting Rhyne v. Henderson Cnty., 973 F.2d 386, 392 (5th Cir. 1992)).

"Liability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference." Id. at 446. The Fifth Circuit has held that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. at 446–47 (quoting Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011)). To establish that a state actor disregarded a known

or obvious consequence of his actions, there must be "actual or constructive notice" that "a particular omission in their training program causes . . . employees to violate citizens' constitutional rights" and the actor nevertheless "choose[s] to retain that program." Connick, 131 S. Ct. at 1360 (citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 407 (1997)).  With respect to a failure-to-train or failure-to-supervise claim, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." Porter, 659 F.3d at 447 (citation omitted); see also Thompson v. Upshur Cnty., 245 F.3d 447, 459 (5th Cir. 2001) ("Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference.").  Any less stringent standard, explained the Fifth Circuit, would turn a failure-to-train claim (or failure-to-promulgate-policy claim) into "de facto respondeat superior liability." Porter, 659 F.3d at 447 (quoting Bryan Cnty., 520 U.S. at 407).

    Here, the allegations of the First Amended Complaint do not satisfy the requirements for supervisory liability under § 1983.  Plaintiff merely asserts in a conclusory fashion that "Steve McCraw had knowledge or, [sic] ostensibly should have known, that these officers were engaging in actions such as the

wrongful arrest that Ms. Tipps experienced" and that better disciplinary policies should have been in place.  (Dkt. # 37 at 4.)  In order to state a claim, Plaintiff must plead examples of other <u>specific</u> instances where Zarate and Kosmalski violated the civil rights of others.  <u>See</u> <u>Porter</u>, 659 F.3d at 446–47.  Standing alone, Plaintiff's vague and conclusory allegations that Zarate and Kosmalski could have been better trained and/or supervised, and that McCraw ought to have instituted a better disciplinary policy, are simply insufficient to state a claim for supervisory liability under § 1983.

Because Plaintiff fails to state a claim for supervisory liability under § 1983, the Court need not reach McCraw's argument that Plaintiff's claims are also barred by qualified immunity.  Accordingly, Plaintiff's § 1983 claims against McCraw are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff may seek leave of Court to re-add these claims if warranted after the completion of discovery.

II.     <u>State-Law Tort Claims</u>

McCraw contends that Plaintiff's common-law tort claims are barred by Texas Civil Practice and Remedies Code § 101.106(f).  However, the First Amended Complaint only appears to assert state-law tort claims against Troopers Zarate and Kosmalski (<u>see</u> Dkt. # 22–38), and Plaintiff does not address McCraw's argument pertaining to common-law torts in her Response to the Motion to

Dismiss. Nevertheless, in an abundance of caution, the Court addresses the merits of McCraw's motion.

As this Court previously explained, in <u>Franka v. Velasquez</u>, 332 S.W.3d 367 (Tex. 2011), the Supreme Court of Texas made clear that any state-law tort claim brought against a government employee based on actions within the scope of his or her employment must be dismissed. See <u>Tipps v. McCraw</u>, --- F. Supp. 2d ----, 2013 WL 2250120, at *5 (W.D. Tex. May 22, 2013) ("[Section] 101.106(f) protects employees even in their <u>individual</u> capacities . . . . [<u>Franka</u>] held that § 101.106 'foreclose[s] suit against a government employee in his <u>individual</u> capacity if he was acting within the scope of employment.'" (quoting <u>Franka</u>, 332 S.W.3d at 381)). Such claims must be brought against only the government entity, even if the state has not waived sovereign immunity for a particular claim. See <u>Univ. of Tex. Health Sci. Ctr. at Houston v. Crowder</u>, 349 S.W.3d 640, 649 (Tex. App. 2011) ("[T]he <u>Franka</u> court expressly concluded that . . . the Legislature [had] made whatever remedy the Tort Claims Act provides against the governmental unit a claimant's exclusive remedy for damages allegedly caused by common-law torts committed by a government employee in the scope of her employment.").

The Texas Tort Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5). The Restatement (Third) of Agency provides:

> An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

Restatement (Third) of Agency § 7.07. "An official acts within the scope of her authority if she is discharging the duties generally assigned to her." City of Lancaster v. Chambers, 883 S.W.2d 650, 658 (Tex. 1994) (finding that on-duty police officers, pursuing a suspect in squad car, did not act outside the scope of their authority in driving without regard for safety of others). This is true even if the employee, in discharging her duties, acts in part to serve the employee's or a third party's interest. Hopkins v. Strickland, No. 01-12-00315-CV, 2013 WL 1183302, at *3 (Tex. App. Mar. 21, 2013).

In this case, Plaintiff is alleging that McCraw failed to properly supervise and train Troopers Zarate and Kosmalski. Even assuming that this somehow imposes tort liability under the doctrine of respondeat superior, because

14

supervising and training subordinate employees falls within the scope of McCraw's employment as Director of the DPS, Plaintiff's state-law tort claims against McCraw fail as a matter of law. Plaintiff's state-law tort claims are, accordingly, **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** McCraw's Motion to Dismiss. (Dkt. # 36).

IT IS SO ORDERED.

DATED: San Antonio, Texas, November 1, 2013.

_____
David Alan Ezra
Senior United States District Judge